UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVID SHIPP,

          Petitioner,

vs.                       Case No. 3:09-cv-266-J-37TEM

SECRETARY, DOC, etc; et al.,

          Respondents.

_____

## ORDER

### I. Status

Petitioner is proceeding on an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #10) (hereinafter Amended Petition), filed on April 16, 2009, pursuant to the mailbox rule.[1]  He initiated this action by filing a Petition (Doc. #1) on March 17, 2009, pursuant to the mailbox rule.  The Amended Petition challenges a 2005 state court (Duval County) conviction for armed robbery with a weapon and conspiracy to commit armed robbery.  Ten grounds are presented in the Amended Petition.  The first ground is the trial court was without subject matter jurisdiction to try the case and impose judgment of conviction and sentence.  This is followed by six grounds of ineffective assistance of trial counsel and two grounds of ineffective assistance of appellate counsel.  In his final ground, Petitioner asserts that the trial court's denial

---

[1] An Amended Appendix (Doc. #11) and an Amended Memorandum of Law (Doc. #12) (hereinafter Amended Memorandum) were also filed.

of his Rule 3.850 motion, relying on the state's response to that motion and without providing record attachments, and the state appellate court's affirmance of that ruling without record support and subsequent denial of rehearing, deprived him of due process and equal protection of the law.

Respondents filed a Response to Petition for Habeas Corpus (Doc. #19) (hereinafter Response) with Exhibits (Doc. #21).[2] Petitioner filed a reply (Doc. #24). See Order (Doc. #13).

## II.  Evidentiary Hearing

The pertinent facts of the case are fully developed in the record before the Court. Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999). No evidentiary proceedings are required in this Court. See High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001). The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

## III.  Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of

_____

[2] The Court will hereinafter refer to the Exhibits as "Ex."

[the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed *de novo*, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

<u>Jennings v. McDonough</u>, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual

findings] by clear and convincing evidence."[3]
28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir.), cert. denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).  See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).  Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts,[4] they must be evaluated under § 2254(d).

## IV.  Timeliness

Respondents calculate that the petition is timely filed, Response at 3, and the Court will accept this calculation.

---

[3] This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

[4] The Court's evaluation is limited to examining whether the highest state court's resolution of the claim is contrary to, or an unreasonable application of, clearly established law, as set forth by the United States Supreme Court.  See Newland v. Hall, 527 F.3d 1162, 1199 (11th Cir. 2008), cert. denied, 129 S.Ct. 1336 (2009).

### V.  Procedural Default

There are prerequisites to a federal habeas review:

> Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction.  See 28 U.S.C. § 2254(b), (c).  To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review.  Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989) (emphasis omitted).  Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999).

Maples v. Allen, 586 F.3d 879, 886 (11th Cir. 2009) (per curiam), cert. granted in part, Maples v. Thomas, 131 S.Ct. 1718 (2011).

Procedural defaults may be excused under certain circumstances: "[n]otwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice." Id. at 890 (citations omitted).  In order for Petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477

> U.S. at 488, 106 S.Ct. 2639). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir.), cert. denied, 528 U.S. 934 (1999).

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citation omitted), cert. denied, 538 U.S. 947 (2003). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

## VI. Ground One

In ground one, Petitioner asserts that the trial court was without subject matter jurisdiction to try the case and impose judgment of conviction and sentence. This claim has no merit as Petitioner was tried on an amended information, Ex. A at 29-30, and Petitioner concedes that testimony under oath was obtained from the co-defendant prior to the filing of the amended information. Amended Memorandum at 3. Even if the original information had been

- 6 -

dismissed, the state would have simply cured the deficiency by filing a new information, after acquiring an addendum.

Assuming *arguendo* there was a defect in the original information, Petitioner was tried on an amended information, and he has not, and cannot, allege that the amended information fails to state a crime. The charging document sets forth the elements of the offense. Ex. A at 10-11, 29-30. There was a sworn Arrest and Booking Report. Id. at 1-5. The assistant state attorney provided the appropriate certification in the information and amended information. Id. at 10-11; 29-30.

The trial court was not deprived of jurisdiction:

> Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). More specifically, federal habeas relief may only be granted on a state charging document where that indictment was so defective as to deprive the trial court of jurisdiction. DeBenedictis v. Wainwright, 674 F.2d 841, 842-43 (11 Cir. 1982), citing, Branch v. Estelle, 631 F.2d 1229, 1233 (5 Cir. 1980). A charging document that sets forth the elements of the offense in language clear enough to enable the defendant to plead a bar in jeopardy does not raise a jurisdictional defect. Alexander v. McCotter, 775 F.2d 595, 599 (5 Cir. 1985). Such was the case here. Further, the identical claim presented in this federal proceeding was raised in the Florida courts and rejected, with the state court finding the subject information not defective under Florida law. This Court, therefore, need not address the issue in a habeas corpus proceeding. See McKay v. Collins, 12 F.3d 66, 68 (5 Cir.), cert. denied, 513 U.S. 854, 115 (1994); Branch v. Estelle, 631 F.2d at 1233.

- 7 -

<u>See</u> <u>also</u> <u>Alexander</u>, 775 F.2d at 599 (holding that state court's refusal to grant habeas relief is tantamount to finding that indictment does not contain a jurisdictional defect).

Even if reviewable, [Petitioner] would not be entitled to relief on this claim, because it is meritless. In Florida, there is no requirement that sworn affidavits be attached to the arrest report. Nor is there a requirement that sworn affidavits be attached to the information. <u>See</u> <u>State v. Bacon</u>, 385 So.2d 1160, 1163 (Fla. 2 DCA 1980). The information here contains the required sworn oath of the Assistant State Attorney certifying that "that testimony has been received under oath from the material witness or witnesses for the offense(s), and the allegations as set forth in the foregoing Information would constitute the offense(s) charged, and that the prosecution is instituted in good faith." <u>See</u> Information. (Exhibit A attached to Rule 3.850 motion, as supplemented) (DE# 10; Ex. 13). This sworn oath of the prosecutor that he received testimony under oath from the material witness or witnesses for the offense is clearly sufficient pursuant to applicable Florida law. See Fla. R.Crim.P. 3.140(g).

<u>Bromell v. McNeil</u>, No. 07-61917-CIV, 2008 WL 4540054, at *17 (S.D. Fla. Oct. 10, 2008) (not reported in F.Supp.2d).

In the alternative, this is a state law claim.  It is not a claim of constitutional magnitude, even though Petitioner has couched his claims in terms of denial of due process and equal protection of the law.  Amended Petition at 5(a).  The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United

States.  See Coleman v. Thompson, 501 U.S. 722 (1991).  The writ of habeas corpus under 28 U.S.C. § 2254 "was not enacted to enforce State-created rights."  Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) (citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)), cert. denied, 531 U.S. 1170 (2001).

The Eleventh Circuit has stated that only in cases of federal constitutional error will a federal writ of habeas corpus be available.  See Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990).  The Supreme Court has often held that federal habeas relief does not lie for errors of state law.  Clearly, it is not the province of a federal habeas court to reexamine state-court determinations on issues of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)).  The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate.  McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir. 1992) (per curiam), cert. denied, 504 U.S. 944 (1992).

Thus, ground one presents an issue of state law that is not cognizable in this proceeding.  This claim cannot provide a basis for habeas corpus relief.

## VII.  Ineffective Assistance of Counsel

Petitioner raises claims of ineffective assistance of trial and appellate counsel.  "The same standard applies whether [a court is] examining the performance of counsel at the trial or appellate level."  Eagle v. Linahan, 279 F.3d 926, 938 (11th Cir. 2001) (citing Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987)).

Recently, the Eleventh Circuit set forth the two-pronged test for establishing ineffective assistance of counsel:

> To succeed on these Sixth Amendment claims, [Petitioner] must show both deficient performance and prejudice: he must establish first that "counsel's representation fell below an objective standard of reasonableness," and then that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); accord Wiggins v. Smith, 539 U.S. 510, 521-22, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Darden v. Wainwright, 477 U.S. 168, 184, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). "The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct." Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998). However, "the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact." Id.
>
> Under AEDPA, we accord deference to a state court's determinations on both Strickland prongs—performance and prejudice—so long as the state court reached the merits of

the petitioner's claim, and reached both
prongs of the <u>Strickland</u> analysis. Moreover,
we are instructed to afford state court habeas
decisions a strong presumption of deference,
even when the state court adjudicates a
petitioner's claim summarily—without an
accompanying statement of reasons. <u>Harrington
v. Richter</u>, --- U.S. ----, 131 S.Ct. 770, 780,
784, 178 L.Ed.2d 624 (2011); <u>Wright v. Sec'y
for Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th
Cir. 2002); <u>see</u> <u>also</u> <u>Renico v. Lett</u>, ---U.S.
----, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678
(2010) ("AEDPA ... imposes a highly
deferential standard for evaluating
state-court rulings ... and demands that
state-court decisions be given the benefit of
the doubt." (citations and internal quotation
marks omitted)).

<u>Ferrell v. Hall</u>, 640 F.3d 1199, 1223-24 (11th Cir. 2011).  <u>See</u>
<u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In
addition to the deference to counsel's performance mandated by
<u>Strickland</u>, the AEDPA adds another layer of deference--this one to
a state court's decision--when we are considering whether to grant
federal habeas relief from a state court's decision."), <u>cert</u>.
<u>denied</u>, 544 U.S. 982 (2005).

In establishing a claim of ineffective assistance of appellate
counsel, there must be a showing that appellate counsel's
performance was so deficient that it fell below an objective
standard of reasonableness, but also, there must be a demonstration
"that but for the deficient performance, the outcome of the appeal
would have been different."  <u>Ferrell v. Hall</u>, 640 F.3d at 1236
(quoting <u>Black v. United States</u>, 373 F.3d 1140, 1142 (11th Cir.
2004)).

Petitioner exhausted his claims of ineffective assistance of trial counsel, presented in grounds two through seven of the Amended Petition, in his Rule 3.850 motion. Ex. M at 1-82. The state responded, <u>id</u>. at 83-87, but the response asserted that the grounds were direct appeal issues, legally insufficient, or not appropriate for a Rule 3.850 proceeding. <u>See</u> Response at 9 n.3. The trial court adopted the state's response, attaching the state's response to the Order Denying Motion for Post Conviction Relief. Ex. M at 88. As noted by Respondents, "[n]o AEDPA-mandated deference is due[.]" Response at 9 n.3. Indeed,

> Where the state court did not reach the merits of the claim, however, "federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings,'" and instead, "the claim is reviewed de novo." <u>Cone v. Bell</u>, --- U.S. ----, 129 S.Ct. 1769, 1784, 173 L.Ed.2d 701 (2009). In deciding whether a state court actually reached the merits of a claim, the Supreme Court has also instructed us that we should presume "the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington</u>, 131 S.Ct. at 784-85 (citations omitted). There is an "indication ... to the contrary" where, for example, the state court has denied the petitioner's claim on only one prong of the <u>Strickland</u> test, and, therefore, we review de novo the prong that the state court never reached. <u>See</u>, <u>e.g.</u>, <u>Rompilla v. Beard</u>, 545 U.S. 374, 380, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); <u>Wiggins</u>, 539 U.S. at 534, 123 S.Ct. 2527.

<u>Ferrell v. Hall</u>, 640 F.3d at 1224.

- 12 -

Here, the state court did not reach the merits of Petitioner's claims, and certainly did not reach both prongs of the Strickland analysis.   Therefore,  no  deference  will  be  given,  and  the ineffective assistance of trial counsel claims will be reviewed de novo.

## VIII.  Ground Two

In his second ground, Petitioner complains that his trial counsel was ineffective during voir dire, by selecting and failing to winnow out jurors Robert Cowles, Pamela White-Penny, and Ethelynn Mackey.  This claim was raised in ground two of the Rule 3.850 motion, Ex. M, and an appeal was taken to the First District Court of Appeal.  Ex. N.  The First District Court of Appeal affirmed per curiam.  Ex. P.

The Voir Dire Proceedings are included in the record.  Ex. B. Robert  Cowles  revealed  that  he  has  a  step  brother  with  the Jacksonville Sheriff's Office (hereinafter JSO) and his father is a civil trial attorney.  Id. at 28.  The trial judge knew the juror's father, but it was reiterated that the juror's father had a civil practice.  Id. at 29.  Also, upon inquiry, Mr. Cowles responded that the fact his stepbrother was employed by JSO would not influence his verdict one way or the other, and he would have no problem serving on the jury and voting not guilty, if he felt he should do so.  Id.

With regard to Pamela White-Penny, she said she has an acquaintance who works for the State Attorney's Office, and she

stated she believed his name was Darryl Brown.  Id. at 34.  The
court asked whether this relationship would affect her verdict one
way or another, and she responded in the negative.  Id.  She felt
she could vote not guilty without worrying about this
acquaintanceship with Mr. Brown.  Id.

Finally, with respect to Ethelynn Mackey, she said that
Sheriff Glover attends her church and she has friends on the
[police] force.  Id. at 35.  She explained that she sees them on
Saturday night at a friend's restaurant, but any discussions
concern food and church, not business.  Id.  She said her
friendships with JSO employees would not affect her verdict, and
she would feel comfortable voting not guilty at the end of the
case.  Id. at 35-36.

A number of the potential jurors had been victims of crimes.
Ms. White-Penny's husband's car was broken into, and no one was
arrested for the crime.  Id. at 63-64.  Ms. Mackey's house was
broken into, and no one was caught for committing that crime.  Id.
at 64.  In response to a question as to whether someone had been
arrested or someone close to them had been arrested, id. at 85, Ms.
White-Penny said she had a cousin that served nine years for
selling drugs, but she explained that situation would not affect
her ability to sit as a juror.  Id. at 87.  Ms. Mackey stated she
had a couple of nephews that were arrested.  Id.  She also said she
had a cousin that was in prison for twenty years for murder in New

- 14 -

York.  Id. at 87-88.  She said it would not affect her ability to deliberate fairly.  Id. at 88.

Apparently, Ms. Mackey felt that she could not see herself putting anyone in jail unless it was serious, and she said whether or not robbery was serious depended on the circumstances.  Id. 91. When asked whether robbery with a gun was serious, she responded that it depended on the circumstances, and "maybe somebody's been messing with him and came back for him[.]"  Id.  Ms. White-Penny said she could leave bias, sympathy, and  prejudice outside of the courtroom.  Id.

Mr. Hernandez did not have any challenges for cause.  Id. at 111.  He did however, use peremptory challenges to strike three "conservative" white males, two retired military men and a construction worker.  Id. at 111-112.  Mr. Cowles, Ms. White-Penny, and Ms. Mackey were accepted by the defense.  Id. at 113, 115-16.

After defense counsel accepted the panel and an alternate, the court called Petitioner Shipp to the front of the courtroom to conduct an inquiry concerning the acceptability of the panel to the Defendant:

> THE COURT:  Mr. Shipp, you have been present during the jury selection process. And you had the chance to confer with Mr. Hernandez.  Are there any jurors that Mr. Hernandez excused that you want to put back on?
>
> THE DEFENDANT:  No, sir.
>
> THE COURT:  Okay.  Are there any that he kept on that you want to kick off?

         THE DEFENDANT:  No, sir.

Id. at 117.

    Petitioner surmises that some of the jurors must have had preconceived notions of guilt in order to find that he, as a principal, carried a weapon during the crime, because the only evidence of a weapon was the victim's testimony that the object the co-defendant held to the back of his neck was a gun.  He contends that no reasonable juror could have found guilt beyond a reasonable doubt as to armed robbery, so these particular jurors must have had preconceived notions of guilt because they had friends or relatives in law enforcement.  He also claims that these jurors must have thought he was guilty because he did not testify, and the evidence presented at trial did not support the verdict.

    Upon review, Petitioner's mental leap that because some of the jurors had relatives, friends or acquaintances on the police force or in the state attorney's office, they found him guilty of carrying a weapon as a principal is completely unsupported by the record.  These jurors attested that their relationships would not interfere with their ability to make a determination that the Defendant was not guilty.  A large number of the prospective jurors had been victims of crimes.  There is nothing in the record tying this factor to the jury's determination of guilt.

    More importantly, the victim testified that when he was robbed, the co-defendant placed a metal object on the back of his head and told him "don't move."  Ex. C at 193.  He described the

object as cold metal, and he thought it was a gun.  Id. at 194.  He confirmed that it was circular in shape.  Id.

On cross, defense counsel attempted to challenge the victim's testimony that he thought the object was a gun.  Defense counsel asked questions as to whether the object could have been simply a tool, like a socket wrench, which would be a circular, cold metal object.  Id. at 209-10.  On redirect, when asked whether the object was a socket wrench or a gun, the victim responded he thought it was a gun.  Id. at 214.

The jury returned a verdict finding the Petitioner guilty of robbery and conspiracy to commit robbery, while further finding Petitioner, as a principal, carried a weapon.  Ex. A at 66-67.  The jury did not make a finding that Petitioner, as a principal, carried a deadly weapon for either offense charged.  Id. Apparently, defense counsel's tactic of suggesting that the circular, cold metal object held to the victim's head by the co-defendant could have been something other than a gun, like a socket wrench, was a very successful strategy, especially in light of the fact that the victim repeatedly said he thought the metal object was a gun.

There was certainly sufficient evidence presented to the jury to find that a weapon was carried by the co-defendant. Petitioner's speculation that there must have been preconceived notions of guilt which led to the verdict is unsupported, vague and conclusory.  The jury could choose to believe or discount the

- 17 -

victim's testimony that there was a weapon held to the back of his head.  Since there was testimony that a cold, circular metal object was used during the robbery, the jury's decision that a weapon was used during the robbery was well-supported by the evidence.

The record shows defense counsel utilized his peremptory strikes to strike what he considered to be conservative white males from the venire.  The judge asked Petitioner if he was satisfied with the jury or if he wanted anyone else stricken from the jury. Petitioner responded that he did not want to kick anyone else off and he did not want to put anyone else back on the jury.  He certainly had the opportunity to express any concerns he may have had about Mr. Cowles, Ms. White-Penny and Ms. Mackey to the court or to his counsel.  He failed to do so, and accepted the panel and the alternate.

This Court must apply the _Strickland_ test to Petitioner's claim of ineffective assistance of counsel.  Counsel's performance during voir dire did not constitute deficient performance.  _See_ Response at 12.  The first prong has not been met.  To satisfy the second prong of the _Strickland_ test, Petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  The Court finds that the second prong of the _Strickland_ test has not been met.  Ground two is due to be denied.

### IX.  Ground Three

In his third ground, Petitioner asserts that defense counsel was ineffective for failing to object to improper argument made by the prosecutor.  In particular, the prosecutor claimed the evidence would show that the robber said:  "[d]on't move or I'll kill you." The prosecutor repeated this phrase three more times during opening statement.  He also said the victim was robbed at gunpoint and the victim felt a gun being pressed to the back of his head. Petitioner asserts that defense counsel should have objected to these statements, and his failure to do so was outside professional norms, and prejudiced Petitioner.

Upon review of the record, during his opening statement, the prosecutor said the victim heard, "[d]on't move or I'll kill you." Ex. C at 173.  The prosecutor repeated this phrase several times. Id. at 173, 174, 176.  He also said the victim felt the cold hard metal of a gun barrel and was robbed at gunpoint.  Id. at 174.  He stated the victim felt a gun being pressed to the back of his head. Id. at 176.

The record shows that the victim testified that he felt a cold metal object, and he thought it was a gun.  Id. at 194.  He also said the metal object was pressed to the back of his head or neck. Id. at 193-94.  He confirmed that it was circular in shape.  Id. at 194.  He frankly admitted that he did not see the gun, but he felt a gun.  Id. at 198, 208, 214.  Thus, there were no grounds for defense counsel to object to that part of the opening statement

- 19 -

that the victim felt a gun being pressed to the back of his head or neck.   Thus, defense counsel was not deficient for failing to object to that part of the opening statement concerning the victim being robbed at gunpoint or the victim feeling a gun pressed to his head during the robbery.

The victim did not attest, however, that the robber said "I'll kill you."   Instead, the victim testified that the robber said "[d]on't move."   <u>Id</u>. at 193.   He reiterated that the robber screamed and said "[d]on't move."   <u>Id</u>.   The question of course is whether defense counsel's performance was deficient because he did not interrupt the opening statement of the prosecutor to object to the prosecutor's assertion that the victim was threatened with the words "or I'll kill you."   In this case, the prosecutor took great liberty with the phrase "don't move," and broadly expanded it to: "don't move or I'll kill you."[5]

---

[5] Although some dramatic license is acceptable in opening statement, the Court certainly does not condone the prosecutor's repeated misstatements of the evidence.   Although there was overwhelming evidence of guilt, except with respect to the weapon issue, it was inappropriate for the prosecutor, not once, but four times, to assert that the victim was threatened with the words "I'll kill you." <u>United States v. Chirinos</u>, 112 F.3d 1089, 1098-99 (11th Cir. 1997), <u>cert</u>. <u>denied</u>, 522 U.S. 1052 (1998) (noting the Eleventh Circuit "condemns the practice whereby a prosecutor refers to evidence in opening statement that the prosecutor never intends to introduce or reasonably knows cannot be introduced at trial."). However, the Eleventh Circuit has said it will reverse a conviction based on prosecutorial misconduct only where the remarks were improper and prejudiced the defendant's substantive rights. <u>United States v. O'Keefe</u>, 461 F.3d 1338, 1350 (11th Cir. 2006), <u>cert</u>. <u>denied</u>, 549 U.S. 1232 (2007).   The court would have to conclude, to grant relief, that "but for the government's improper remarks, the trial outcome would be different." <u>Id</u>.   Also, these statements

- 20 -

A defense attorney may be reluctant to interrupt an opening statement, because it is not evidence, and is merely a statement by the prosecutor as to what he believes the evidence will show. Interruptions during opening statements may be perceived negatively by the jury, as either unnecessary based on the court's instructions, or discourteous.  Here, counsel did not object, but he and the court were obviously aware that the state failed to submit any evidence to support the assertion that the "I'll kill you" phrase was uttered by the robber.  Id. at 287 ("THE COURT: Mr. Ches [the prosecutor], said it four times.  That doesn't count?  MR. HERNANDEZ [defense counsel] Three or four times.").  Instead, defense counsel elected to attack the prosecutor's very obvious failure to present evidence that a robber said the phrase "I'll kill you[,]" by immediately highlighting this failure in closing argument.

---

should be considered in the context of the entire trial.  "[G]iven the strength of the evidence of the petitioner's guilt, it is apparent that the prosecutor's statements were, at worst no more than harmless error."  Brown v. McNeil, No. 08-21409-CIV, 2009 WL 2970419, at *12 (S.D. Fla. Sept. 15, 2009).  If improper comments come in, Petitioner must still show substantial prejudice.  The comments, when considered in the context of the entire proceeding, did not render the proceeding fundamentally unfair.  See Land v. Allen, 573 F.3d 1211, 1220 (11th Cir. 2009) (per curiam) (recognizing that the prosecutor's conduct was outside the bounds of propriety, but concluding it did not render the trial fundamentally unfair).  Finally, Petitioner "cannot show prejudice in his defense counsel's failure to object to prosecutorial misconduct that, itself, does not warrant reversal."  Land v. Allen, 573 F.3d at 1221.

Defense counsel attacked the state's case saying:

>    MR. HERNANDEZ:  The state, I believe in this case has overstated their case.
>
>    You heard the state attorney during opening statement, whenever he repeated three to four times, Don't move or I will kill you.
>
>    He stated that as a theme to make sure that it was pounded into y'all.
>
>    But you remember what Mr. Feimi told you. He just said, Don't move.
>
>    Okay.  Small thing, but it's an overstatement of the case there.
>
>    You got to take what comes from that witness stand as the evidence.
>
>    The lawyers are doing their best to summarize, but what would actually come from that witness stand, what y'all remember, is what the evidence is in this case.
>
>    Whoever it was that came up behind said, Don't move.
>
>    There's no weapon.  There is no weapon. There's no gun.  Mr. Feimi did not see a gun. Ms. McLee did not see a gun.  No gun was talked about.
>
>    That's the evidence.  That's the evidence that you have before you.

Id. at 299-300.

Defense counsel's strategy of attacking the prosecutor's opening statement during closing argument does not constitute deficient performance.  The impact of this attack was much greater than simply making an objection during opening statement.  Defense counsel could argue that there was a complete failure, by the

state, to prove that this phrase was uttered by a robber, even though the prosecutor had asserted that such a statement had been made during the course of the robbery and had made it the theme of his opening statement.  Failure to object during the prosecutor's opening statement did not amount to deficient performance under the performance prong of Strickland.

> "It is well established that the Supreme Court's decision in Strickland [ v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] is the 'controlling legal authority' to be applied to ineffective assistance of counsel claims." Marquard v. Sec'y for Dep't of Corrs., 429 F.3d 1278, 1304 (11th Cir. 2005), cert. denied, 547 U.S. 1181, 126 S.Ct. 2356, 165 L.Ed.2d 283 (2006). Under this standard, in order to show deficient performance, the petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. See Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. The court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (internal quotations omitted). The court's review of counsel's performance must be highly deferential, and the court must avoid second-guessing counsel's performance. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. Further, the courts must make an objective inquiry into the reasonableness of counsel's performance. Chandler, 218 F.3d at 1315. There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. Id. at 1317.

Williams v. Allen, 458 F.3d 1233, 1238-39 (11th Cir. 2006), cert. denied, 549 U.S. 1306 (2007).

Recognizing that the <u>Strickland</u> standard applies, Petitioner has not demonstrated prejudice.  He has not shown that there is a reasonable probability that the result of the proceeding would have been different if defense counsel had objected to the prosecutor's statements.  Defense counsel's strategic decision to attack the prosecutor's statements during the defense's closing argument had great impact, was reasonable, and does not constitute a constitutional violation.

### X.   Ground Four

In his claim of ineffective assistance of counsel raised in the fourth ground of the Petition, Petitioner asserts that his counsel was ineffective for making an insufficient objection to the victim's testimony speculating that the object held to his head during the robbery was a gun.  Respondents assert that counsel objected on the ground of speculation, his objection was overruled, and the matter was preserved for appellate review.  Ex. C at 194.

First, the Court notes that English is the victim's second language.  <u>Id</u>. at 183.  Thus, some of his responses were grammatically incorrect, but the answers to the questions were responsive and appropriate.  When asked what he thought was held to the back of his head, the victim said he thought it was a gun.  <u>Id</u>. at 194.  Defense counsel did object based on speculation.  <u>Id</u>.  The trial court overruled the objection and let the witness testify as to why he thought it was a gun.  <u>Id</u>.

The witness admitted that he did not see the gun.  Id. at 198, 208.  On cross, counsel asked if the victim had ever felt a gun on his skin before, and the victim responded in the negative.  Id. at 209.  Defense counsel then made an inquiry about whether a metal tool, like a socket wrench, might be a round metal object, suggesting that a tool could have been the object touching the victim's skin, rather than a gun.  Id. at 209-10.

The jury was instructed:

> Therefore, if you find the defendant guilty of robbery you must then consider whether the state has further proved those aggravating circumstances and reflect this in your verdict.
>
> If you find that the defendant carried a gun in the course of committing the robbery and that the gun was a deadly weapon you should find him guilty of robbery with a deadly weapon.
>
> If you find the defendant carried a weapon that was not a deadly weapon in the course of committing the robbery you should find him guilty of robbery with a weapon.
>
> If you find that the defendant carried no weapon in the course of committing the robbery but did commit the robbery you should find him guilty only of robbery.
>
> A weapon is a deadly weapon if it is used or threatened to be used in a way likely to produce death or great bodily harm.
>
> A weapon is legally defined to mean any object that could be used to cause death or inflict serious bodily harm.

Ex. D at 346-47.

Petitioner asserts that defense counsel should have argued that the victim's speculation that there was a gun violated due process, and cited case law in support of his objection. Petitioner asserts that counsel's failure to argue that the speculation deprived Petitioner of due process of law and a fair trial, constituted ineffective assistance of counsel, and, as a result, this led to the jury finding that as a principal, Petitioner carried a gun.

Petitioner's argument is fundamentally flawed and completely unsupported by the record.  The jury did not find that Petitioner, as a principal, carried a deadly weapon, to wit: a gun, as charged in the amended information.  Ex. A at 29.  Instead, the jury found that Petitioner, as a principal, carried a weapon.  Ex. A at 66; Ex. D at 374.

Even if counsel had made a due process argument and presented case law in support of his objection, and even assuming the trial court had sustained the objection and prevented the witness from speculating that the cold, round metal object pressed to his neck or head was a gun, it would not have prevented the witness from describing the object that was held to his neck or head as a cold, circular, metallic object and expressing his fear of same.

Petitioner has failed to prove either prong of the Strickland test.  Counsel's performance was not deficient as he made an objection, and the objection was overruled.  Counsel, through cross examination, was able to elicit that the victim had never felt a

- 26 -

gun on his skin and that there were tools, like a socket wrench, that were cold, metal circular objects.  Furthermore, Petitioner has failed to show a reasonable probability that the outcome of the proceeding was negatively affected by counsel's performance. Petitioner has failed to show prejudice as required under the second prong of <u>Strickland</u>.

## XI.  Ground Five

In ground five, Petitioner contends that counsel was ineffective for failing to object to improper bolstering of witness Juanita McLee, and for failing to utilize her plea agreement to impeach her testimony.  The state introduced a prior consistent statement of Juanita McLee, her written statement provided to JSO, which was recited by Larry Kuczkowski, the lead detective on the case.  When the statement was introduced, counsel objected, based on hearsay.  Ex. C at 277.  The court overruled the objection and admitted the written statement into evidence.  <u>Id</u>.  Once admitted, the detective read the statement for the jury.  <u>Id</u>. at 277-80.

No confrontation issue is raised as Juanita McLee testified. <u>Id</u>. at 228.  She testified:

> Q     Were you charged with armed robbery and conspiracy to commit armed robbery?
>
> A     Yes, ma'am.
>
> Q     Did you plead guilty to those charges?
>
> A     Yes, ma'am.

Q    When you pled guilty was there any agreement between you and the state?

A    No, ma'am.

Q    Have you been promised anything by the state to get you to enter that guilty plea?

A    No, ma'am.

Q    Who is going to decide what your sentence is going to be?

A    The judge.

Q    Are you looking at life in prison?

A    Yes, ma'am.

Q    Are you currently awaiting sentencing?

A    Yes, ma'am.

Id. at 229-30.

On cross examination, defense counsel inquired:

Q    Now, ma'am, you're hoping that the judge will give you time served for this? That's your hope, isn't it, ma'am?

A    Yes, sir.

Q    And when you gave your written statement isn't it a fact, ma'am, that you stated that Devon took the pizza bag out and put it in the trash?[6]

A    Yes, sir.

Q    You said that in your written statement, right?

---

[6] Ms. McLee admitted that the written statement that Devon threw away the pizza bag was a lie, because she was the person who threw away the bag. Ex. C at 262.

A     Yes.

Id. at 261.  Ms. McLee identified the handwriting on her written
statement as her own.  Id. at 263.

She realized that the judge would be the person to decide her
sentence, and denied there were any agreements for time served.
Id. at 266.  She simply hoped for time served.  Id.

Petitioner asserts that there was an agreement between McLee
and the state, because the state had agreed not to oppose her
lawyer's request for a three-year probationary sentence and the
state would advise the judge she had rendered valuable assistance
to the state in prosecuting the case.[7]

Based on the record, counsel's performance was not deficient.
Ms. McLee attested that she had not been promised anything by the
state to obtain her plea, there was no plea agreement, and that she
was hoping for time served.  On cross, defense counsel asked if she
was hoping for time served, and she responded affirmatively.  She
also admitted that she had lied in her written statement to the
police.

Although Petitioner alleges there was a "plea agreement", he
has failed to show there was a plea agreement between the witness
and the state.  The record does not support this allegation.  Ms.

---

[7] No documentation has been submitted supporting this
allegation.  Furthermore, Petitioner has failed to allege how his
counsel should have known about such an agreement, if an agreement
existed at the time of trial, if the prosecution failed to reveal
it to him or to the court and it was not otherwise documented.

McLee was hoping for a favorable sentence because she was testifying against two co-defendants. Defense counsel brought forth the fact that Ms. McLee hoped her testimony against her co-defendants might convince the judge to give her time served as a sentence. This did not amount to deficient performance, and there was no prejudice.

Petitioner also complains that the admission of McLee's written statement was improper bolstering. Assuming it was improper to admit the written statement through the detective, counsel's performance was not deficient because he did object to the admission of the written statement, and the court overruled his objection.

If there was improper bolstering, there was no prejudice. Ms. McLee had already testified about her role in the robbery and about the robbery plan and her co-defendants actions. She confirmed that the written statement was her statement. Ex. C at 245, 263. She admitted that she had lied in a portion of the written statement, claiming Devon Ducree took the pizza bag out and put it in the trash, when in fact, she had thrown the pizza bag away. Id. at 261-62. She explained she did not see a firearm or a weapon, id. at 263-64, but she did hear the discussion as to how David Shipp and Devon Ducree were going to execute the robbery of the pizza man. Id. at 264-65.

Respondents explain that the written statement was admitted as substantive evidence of the conspiracy, asserting if counsel had

objected to the statement claiming bolstering, it would have been overruled under Florida law.  Response at 18-19, citing <u>Arquelles v. State</u>, 842 So.2d 939, 943 (Fla. 4th DCA 2003) (recognizing the co-conspirator hearsay exception).  To the benefit of the defense, defense counsel was able to cross examine the detective and emphasize the fact that Ms. McLee never mentioned a firearm to the detective, either orally or in her written statement.  <u>Id</u>. at 281.  Additionally, Ms. McLee demonstrated how the co-defendants planned to commit the robbery, moving her hand in a hitting motion.  <u>Id</u>. at 281.  Defense counsel's strategy was to emphasize the defense theory that no weapons were utilized during the robbery, and impeaching McLee's statement would have undermined this strategy.

Petitioner has failed to satisfy either the performance or prejudice prong under <u>Strickland</u>, and he is not entitled to relief on this ground.  Therefore, ground five is denied.

## XII.  Ground Six

In his sixth ground, Petitioner claims counsel was ineffective for failing to object to the jury instruction on principals, and for inadequately objecting to a change in the verdict form to include a finding of carrying a weapon as a principal.  Defense counsel objected to the change in the verdict form based on jury confusion, as the court had already read the verdict form to the jury, and in the alternative, he based his objection on the fact that the change would highlight the principal theory.  Ex. D at 362-63.  The objection was overruled.  <u>Id</u>. at 364.

Counsel was not ineffective for failing to object to the instruction on principals.  During voir dire, the venire was advised by the prosecutor that there was likely to be an instruction given by the judge on the principal theory.  Ex. B at 68-74.  The court stated an instruction on principals would be given, and there was no objection.  Ex. C at 293.  The following instruction was given:

> Principals.
>
> If the defendant helped another person or persons commit or attempt to commit a crime the defendant is a principal and must be treated as if he had done all of the things the other person or persons did if the defendant had a conscious intent that the criminal act be done and the defendant did some act or said some word which was intended to and did incite, cause, encourage, assist, or advise the other person or persons to actually commit the crime.
>
> To be a principal the defendant does not have to be present when the crime is committed or attempted.

Ex. D at 350-51.

There was no error in instructing the jury on principals. There was sufficient evidence to support the instruction.  An objection to the instruction would not have been well-taken as there was no plausible basis for an objection based on the evidence presented at trial.  Furthermore, there is no requirement that the information inform the defendant that he is being charged as a principal.  See Roberts v. State, 813 So.2d 1016, 1017 (Fla. 1st DCA 2002) (per curiam) (when there is sufficient evidence adduced

- 32 -

in the state's case to support the instruction, the trial court did not err by giving the principals instruction, even if the defendant was not charged with aiding and abetting).

Defense counsel did not perform deficiently by failing to object to the instruction on principals.  The evidence supported the principals charge given to the jury; therefore, an objection to the charge would have not carried the day.

This Court recently addressed the question of whether a petitioner was deprived of a fair trial and due process of law when the jury was instructed on the law of principals from Florida Standard Jury Instruction (Criminal) 3.01:

> "[F]ederal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'" Jamerson v. Sec'y for the Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)).

> Here, as the Florida Supreme Court observed, the instruction was a correct statement of Florida law. Petitioner has not shown that the instruction was given in error such that it "so infected the entire trial that the resulting conviction violate[d] due process."

Dailey v. Sec'y, Fla. Dep't of Corr., No. 8:07-CV-1897-T-27MAP, 2011 WL 1230812, at *13 (M.D. Fla. Apr. 1, 2011).

- 33 -

Here, there was no violation of due process by giving the principals jury instruction.  Testimony was presented showing Petitioner actively participated in the planning and carrying out of the robbery.  The victim identified Petitioner as a participant in the robbery.  The co-defendant attested to Petitioner planning the robbery and returning from the robbery with the items taken from the pizza delivery man.

Again, counsel did object to the changes in the verdict form, complaining the changes might lead to confusion since the verdict form had been read to the jury, and the changes would highlight the principal theory.  After the verdict form was changed, the court read the new verdict form to the jury, eliminating the element of confusion.  Ex. D at 368-71.  The jury was provided with a copy of the instructions and the new verdict form.  Id. at 371.  Therefore, they had the opportunity to read both the principals instruction and the new verdict form during deliberation.

Instead of causing confusion or highlighting the principal theory, the new verdict form required, if there was a finding of guilt, that the jury choose whether the Defendant, as a principal, carried a deadly weapon or a weapon, or, in the alternative, to select the finding that the Defendant carried no deadly weapon or weapons.  Ex. A at 66-67.  The jury believed the testimony of the victim and the co-defendant that Petitioner conspired to commit a robbery and participated in the robbery.  Additionally, the jury believed the victim's testimony that a co-defendant carried a

weapon during the robbery, and Petitioner, as a principal, was guilty of carrying a weapon.  The jury did not, however, find that Petitioner, as a principal, carried a deadly weapon, apparently rejecting the testimony of the victim that the object he felt against his head or neck during the robbery was a gun.

Petitioner has failed to satisfy either prong of the Strickland test, that is, he has failed to show deficient performance by counsel and he has failed to show a reasonable probability, that but for his performance, the result of the proceeding would have been different.  Confidence in the outcome of the proceedings has not been undermined.

### XIII.  Ground Seven

In ground seven, Petitioner contends that counsel's performance was ineffective due to his failure to move the trial court to set aside the jury's verdicts on the ground of variance between the verdicts and the evidence adduced at trial.   In support, Petitioner asserts that the victim's testimony that there was a weapon involved was "pure speculation."

In pertinent part, the amended information reads as follows:

> HARRY L. SHORSTEIN, State Attorney for the Fourth Judicial Circuit of the State of Florida, in and for Duval County, charges that JUANITA TARA MCLEE, DAVID DEVON DUCREE, and DAVID GAIUS SHIPP on the 22nd day of December, 2004, in the County of Duval and the State of Florida, did unlawfully by force, violence, assault, or putting in fear, take money or other property, the property of Edmond Feimi, as owner or custodian, from the person or custody of Edmond Feimi, with the intent to

- 35 -

permanently or temporarily deprive Edmond
Feimi of the money or other property, and in
the course of committing said robbery, carried
a deadly weapon, to-wit: a gun, contrary to
the provisions of Section 812.13(2)(a),
Florida Statutes.

And for the second count of this
information, your informant further charges
that JUANITA TARA MCLEE, DAVID DEVON DUCREE,
and DAVID GAIUS SHIPP on the 22nd day of
December, 2004, in the County of Duval and the
State of Florida, did agree, conspire, combine
or confederate with JUANITA TARA MCLEE and
DAVID DUCREE to commit Armed Robbery, by
unlawful force, violence, assault, or putting
in fear, take money or other property, the
property of Edmond Feimi, as owner or
custodian, from the person or custody of
Edmond Feimi, with the intent to permanently
or temporarily deprive the lawful owner or
custodian of the money or other property, and
in the course of committing said robbery,
carried a deadly weapon, to-wit: a gun,
contrary to the provisions of Sections
812.13(2)(a) and 77.04(3), Florida Statutes.

Ex. A at 29.

The jury found Petitioner guilty of armed robbery and
conspiracy to commit armed robbery, but found the offenses were
committed with a weapon, not a deadly weapon. In reviewing the
evidence presented at trial, the victim's testimony was legally
sufficient to support the jury finding that a weapon was used
during the robbery. Ex. C at 193-95, 208-10, 214.

During the charge conference, the court asked defense counsel
whether he had any problem with having the jury find whether the
"defendant carried a deadly weapon, carried a weapon, carried no
deadly weapon or weapons." Ex. C at 290-91. He responded in the

negative.  _Id_. at 291.   The same question was asked about the second count, and again, counsel responded in the negative.  _Id_. Thus, counsel was in no position to object about a variance when he agreed that the jury should determine whether there was a deadly weapon, a weapon, or no deadly weapon or weapons.

After the instructions and new verdict form were read to the jury, the court inquired as to whether there were any exceptions or objections to the instructions as given, other than those expressed during the charge conference.  Ex. D at 371.  Defense counsel complained that the verdict form was highlighted by reading it once, adding the principal words, and reading it again.  _Id_. at 371-72.  The court noted the objection, overruled it again, and said "the highlighting is eliminated by reading the entire [verdict form] instruction a second time."  _Id_. at 372.

Defense counsel did not object to the jury being asked to find whether the defendant carried a deadly weapon, weapon, or no deadly weapon or weapons.   In closing, however, he did forcefully argue that there was no weapon, there was no gun, and neither the victim nor Ms. McLee saw a gun.  Ex. C at 300.  He reminded the jury that they would have to determine whether there was a gun or a weapon involved in the incident.  _Id_. at 301.  He reiterated that there was no weapon, _id_., and asserted it "wasn't an armed robbery with a gun."  _Id_. at 303.  _See_ _id_. at 305.  In final closing argument, defense counsel said there had been no direct testimony that there was a gun.  Ex. D at 341.  He reminded the jury that Ms. McLee

never saw a gun.  Id.  He referred back to Ms. McLee's statement that the plan was to hit somebody over the head.  Id.

The Due Process Clause of the Fourteenth Amendment requires the state to prove beyond a reasonable doubt each element of the offense charged.  Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997)(citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)), cert. denied, 522 U.S. 1125 (1998).  "[T]his court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State."  Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)).  The relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt.  Thompson, 118 F.3d at 1448.

Counsel's performance was not deficient for failing to move the trial court to set aside the jury's verdicts on the ground of variance between the verdicts and the evidence adduced at trial. There was evidence of a weapon, based on the testimony of the victim.  After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Petitioner committed the offenses of armed robbery with a weapon and conspiracy to commit armed robbery with a weapon.

Counsel, in closing argument, presented a very persuasive argument that there was no gun.  Indeed, the jury, after deliberation, did not find a deadly weapon.  Certainly, counsel's

- 38 -

performance did not fall below an objective standard of reasonableness under these circumstances. Petitioner has failed to support a claim of ineffective assistance of counsel under <u>Strickland</u>, and there has not been a showing of prejudice.

## XIV. Grounds Eight and Nine

Petitioner claims his appellate counsel was ineffective for failing to preserve and present constitutional issues on direct appeal and for failing to raise the issue of the trial court's denial of his motion to suppress identifications by the victim. Respondents assert that portions of these claims are unexhausted.

On direct appeal, five issues were raised:

<u>ISSUE I</u>
WHETHER THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON THE "WEAPON" AGGRAVATOR?

<u>ISSUE II</u>
WHETHER THE TRIAL COURT ERRED REVERSIBLY IN ADMITTING THE VICTIM'S SPECULATIVE TESTIMONY THAT A GUN WAS PRESSED TO HIS HEAD?

<u>ISSUE III</u>
THE TRIAL COURT ERRED IN SENTENCING APPELLANT AS AN HABITUAL FELONY OFFENDER BECAUSE A CONVICTION WITH ADJUDICATION OF GUILT WITHHELD AND SENTENCE SUSPENDED IS NOT A QUALIFYING PREDICATE OFFENSE.

<u>ISSUE IV</u>
WHETHER THE TRIAL COURT ERRED IN SENTENCING APPELLANT AS AN HABITUAL FELONY OFFENDER BECAUSE THE DOCUMENT USED TO ESTABLISH ONE OF THE PREDICATE OFFENSES WAS INADMISSIBLE AS HEARSAY AND ITS ADMISSION ALSO VIOLATED APPELLANT'S RIGHT OF CONFRONTATION?

<u>ISSUE V</u>

> WHETHER THE TRIAL COURT SENTENCED APPELLANT IN VIOLATION OF <u>APPRENDI v. NEW JERSEY</u> BECAUSE THE JURY WAS NOT INSTRUCTED TO APPLY THE BEYOND A REASONABLE DOUBT STANDARD TO THE "WEAPON" AGGRAVATOR?

Ex. F at i.

Federal questions were raised in issues IV (<u>Crawford v. Washington</u>, 541 U.S. 36 (2004)) and V (<u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000)). Petitioner asserts that issue I should have included an argument that the trial court's denial of the motion for judgment of acquittal as to the weapon aggravator deprived him of due process and equal protection, as guaranteed by the United States Constitution. He claims issue II should have included an argument that the trial court's admission, over objection, of pure speculation testimony of the victim violated Petitioner's right to due process and equal of the law, and deprived him of a fair trial. He also claims that issue IV should have presented a more complete Confrontation Clause argument, and issue V should have included a claim that he was deprived of due process of law based on an <u>Apprendi</u> violation.

In his state habeas petition, Petitioner did not assert that direct appeal issues IV and V were inadequately presented by appellate counsel. Ex. J. Therefore, since Petitioner never presented this portion of his claim to the state courts, this portion of his ground eight is unexhausted and procedurally defaulted. As noted by the Eleventh Circuit:

- 40 -

> If a petitioner fails to "properly"
> present his claim to the state court-by
> exhausting his claims and complying with the
> applicable state procedure-prior to bringing
> his federal habeas claim then AEDPA typically
> bars us from reviewing the claim. Exhaustion
> requires that "state prisoners must give the
> state courts one full opportunity to resolve
> any constitutional issues by invoking one
> complete round of the State's established
> appellate review process." O'Sullivan v.
> Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728,
> 144 L.Ed.2d 1 (1999); see § 2254(b), (c).
> That is, to properly exhaust a claim, the
> petitioner must "fairly present[ ]" every
> issue raised in his federal petition to the
> state's highest court, either on direct appeal
> or on collateral review. Castille v. Peoples,
> 489 U.S. 346, 350-51, 109 S.Ct. 1056, 103
> L.Ed.2d 380 (1989) (quotation omitted).

Powell v. Allen, 602 F.3d 1263, 1269 (11th Cir. 2010) (per curiam).

Petitioner has not shown cause and prejudice or that a fundamental miscarriage of justice will result if this part of ground eight is not addressed on the merits. See supra Part V. Therefore, the Court will not reach the merits of this portion of the Amended Petition.

Petitioner's claim that appellate counsel's performance was deficient for failing to include a claim that Petitioner was deprived of due process and equal protection of the law by the trial court's denial of the motion for judgment of acquittal is due to be denied. Petitioner has completely failed to demonstrate that but for the alleged deficient performance, the outcome of the appeal would have been different. Indeed, the outcome of the appeal would not have been different under the circumstances

- 41 -

presented.   There was more than sufficient evidence that a weapon was used during the crime.   There simply was no due process violation.  <u>See</u> Response at 30; <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).   In addition, Petitioner has completely failed to support an equal protection claim.   Petitioner has failed to show deficient performance or prejudice under the <u>Strickland</u> standard.

Petitioner also claims issue II should have included an argument that the trial court's admission, over objection, of pure speculation testimony of the victim violated Petitioner's right to due process and equal of the law, and deprived him of a fair trial. Again, Petitioner has failed to show that but for the alleged deficient performance, the outcome of the appeal would have been different.   This is simply not the case.   <u>See</u> § X, addressing ground four.   Petitioner has failed to satisfy the two-pronged test under <u>Strickland</u>.   There was neither deficient performance or prejudice.

Finally, Petitioner alleges his appellate counsel was ineffective for failing to raise the issue of the trial court's denial of his motion to suppress identifications by the victim. Prior to trial, a Motion to Suppress in Court identification and Out of Court Identification of the Defendant Based on a Suggestive Lineup was filed.   Ex. A at 34-35.   It was asserted that, in the photo lineup, Petitioner's photograph was the only one with medium length hair.  <u>Id</u>.   The motion was heard.   Ex. C at 131-34.   It was argued that the six people within the lineup were in jail togs, but

Petitioner was the only person in the lineup with medium-length hair.  Id. at 131.  The victim had described one of the robbers as having medium-length hair.  Id.

The court reviewed the photo spread.  Id. at 131-32.  The court found that Petitioner's hair was slightly longer than the hair of the other five individuals, but all the photographs were of young, African American males in jail coveralls.  Id. at 132.  The court, however, described the picture of Petitioner as a person with short hair.  Id. at 133.  The court concluded:

> THE COURT:  I don't think to me it's -- I look at six people who have short hair when I see this picture.  I agree that it's longer than the other people's, but I don't think it's medium.
>
> Of course, that might be another criticism you might have of the identification.
>
> But the lineup is not unduly suggestive so I will deny the motion to suppress in-court and out-of-court identification of the defendant.

Ex. C at 133-34.  A written order denying the motion was entered on August 31, 2005.  Ex. A at 36.

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Furthermore, AEDPA "also directs that a presumption of correctness be afforded

factual findings of state courts, which may be rebutted only by clear and convincing evidence.  See id. at § 2254(e)(1).

The trial court found the line-up was not unduly suggestive. The findings of the trial court are presumed to be correct, 28 U.S.C. § 2254(e), and Petitioner has failed to rebut this presumption by clear and convincing evidence.

To determine whether Petitioner was prejudiced by his attorney's failure to raise a particular issue on appeal, the Court "must decide whether the arguments the [Petitioner] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)), cert. denied, 531 U.S. 1131 (2001). "If [a court] conclude[s] that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal." Eagle v. Linahan, 279 F.3d at 943 (citing Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990)).

Petitioner filed a Petition for Writ of Habeas Corpus alleging ineffective assistance of appellate counsel.  Ex. J.  The First District Court of Appeal per curiam denied the petition on its merits.  Ex. K.

The decision of the First District Court of Appeal is entitled to AEDPA deference, regardless of whether or not an explanation is provided for the reasoning behind the court's decision.  Wright,

278 F.3d at 1254-55.  Upon a thorough review of the record and the applicable law, the First District Court of Appeal's adjudication of this claim of ineffective assistance of appellate counsel was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Petitioner is not entitled to relief on the basis of grounds eight and nine.

## XV.  Ground Ten

In his final ground, Petitioner asserts that the trial court's denial of his Rule 3.850 motion based on the state's response, without record attachments, and the First District Court of Appeal's affirmance of that decision without written opinion and its denial of rehearing, deprived him of due process and equal protection of the law.  A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  To the extent that Petitioner argues that the trial court and the First District Court of Appeal's decisions were in error and deprived him of due process and equal protection of the law, such a claim does not present an issue that is cognizable on federal habeas review.  The Eleventh Circuit has noted:

> In Spradley v. Dugger, we held that where a
> petitioner's claim goes to issues unrelated to
> the cause of petitioner's detention, that
> claim does not state a basis for habeas
> relief.  825 F.2d 1566, 1568 (11th Cir. 1987)
> (involving claims as to errors at a hearing on
> the petitioner's 3.850 motion); see also
> Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir.
> 1995) ("An attack on a state habeas proceeding
> does not entitle the petitioner to habeas
> relief in respect to his conviction, as it is
> an attack on a proceeding collateral to the
> detention and not the detention itself.")
> (internal quotes omitted); Franzen v.
> Brinkman, 877 F.2d 26, 26 (9th Cir. 1989)
> (agreeing with the majority view and holding
> that "a petition alleging errors in the state
> post-conviction review process is not
> addressable through habeas corpus
> proceedings"). Therefore, while habeas relief
> is available to address defects in a criminal
> defendant's conviction and sentence, an
> alleged defect in a collateral proceeding does
> not state a basis for habeas relief.  See
> Spradley, 825 F.2d at 1568.

Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir.), cert. denied,

543 U.S. 960 (2004).

Petitioner has not presented an issue cognizable on federal

habeas corpus review because he is really complaining about an

alleged defect in a collateral proceeding, which does not state a

claim for habeas relief.  Quince, 360 F.3d at 1261-62.  Thus,

Petitioner is not entitled to relief on the basis of this claim.

### XVI.  Certificate of Appealability

If Petitioner appeals the denial of the Amended Petition, the

undersigned opines that a certificate of appealability is not

warranted.  See Rule 11, Rules Governing Section 2254 Cases in the

United States District Courts.  This Court should issue a

certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.  Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

- 47 -

1.    The Amended Petition (Doc. #10) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The **Clerk of the Court** shall enter judgment accordingly and close this case.

4.    If Petitioner appeals the denial of his Amended Petition, **the Court denies a certificate of appealability**.   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of July, 2011.

ROY B. DALTON, JR.
United States District Judge

sa 7/6
c:
David Shipp
Ass't A.G. (McCoy)